Richard RUSSELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 53201.

Court of Criminal Appeals of Texas.

April 6, 1977.

Rehearing Denied May 25, 1977.

Emmett Colvin, Dallas, for appellant.

Henry Wade, Dist. Atty., Sue Lagarde and Richard G. Worthy, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DOUGLAS, Judge.

On original submission we affirmed in a per curiam opinion the order revoking appellant's probation, overruling his sole contention that he was denied effective assistance of counsel when he was originally convicted and placed on probation.

On rehearing he contends that the evidence was insufficient at the revocation hearing to show that he violated the condition of probation to commit no offense against the laws of this State. He also contends that because he was found not guilty under an indictment his probation could not be revoked upon the same transaction. We overrule both contentions.

Only the facts at the revocation hearing are before us. Russell was indicted by a Dallas County grand jury for the offense of theft during its July, 1975 term in Cause No. F75–12165–MP and subsequently a motion to revoke probation was filed on October 30, 1975. By agreement, the motion to revoke probation was heard simultaneously with Cause No. F75–12165–MP because both were based upon the same transaction. Trial was before the court upon a plea of not guilty in Cause No. F75–12165–MP.

On September 20, 1975, Otis Dunlap purchased certain real property located on Lake Tawokani in Van Zandt County delivering to appellant his personal check in the amount of $250.00 representing one-half of the required down payment upon signing of a contract of sale. Two days following the signing of the contract Dunlap made a check of the tax rolls of Van Zandt County and discovered that appellant was not the owner of the property in question and a complaint was filed when he could not locate Russell.

Dunlap testified that on September 20, 1975, in response to an ad in the Dallas Morning News, he made an appointment to see the lots advertised for sale by appellant on Lake Tawokani. Dunlap, his wife and daughter met appellant at Terra-Mar Estates on Lake Tawokani on the same day.

Initially Russell showed the Dunlaps lots priced from $4,000.00 to $6,000.00. Dunlap asked "Is this the land that was advertised?" and Russell said, "No." Dunlap's wife then insisted that he show them the lots advertised for $1500.00. Russell took them to another section and they were shown three lots priced at $6,000.00, $5,000.00 and $2,000.00, respectively. Dunlap stated that he and his wife decided on the $2,000.00 lot and prior to entering into the contract of sale asked appellant if he owned the property he was attempting to sell. "He said he owned it." However, Russell made no mention of any liens, security interest, adverse claims or any other legal impediment to his enjoyment of the property. Russell requested $500.00 as down payment and the balance in installments bearing interest at the rate of ten (10%) percent per annum. Dunlap refused to pay the full $500.00 but agreed to pay $250.00 and another $250.00 within ten days. He further testified that if in fact Russell had made disclosure to him that he did not own the land he would not have entered into the contract nor given him the $250.00. On Monday, September 22, Dunlap's bank called him to verify the amount of the check because an apparent inconsistency existed between the numerical figure and the written amount. He then tried to call Russell at the number he had called on Saturday, 270–8102, and found that it had been disconnected. He then tried to call the ". . . Richard Russell listed of Sulphur Springs, Texas, also of Greenville, also of Sulphur Springs, Oklahoma," to no avail. He then went to Canton to check the Van Zandt County tax rolls and discovered that the property was owned by Margaret Funderburk Estates. Dunlap did not pay the second $250.00.

George Funderburk testified that the property in question belonged to him and his sister. He stated that the property had been listed with Kennedy Realtors of Longview. Funderburk further testified that a contract of sale on the acreage of Terra-Mar Estates had been entered into between him and Richard Russell on May 23, 1975, and that at the time of the signing of the contract $1,000.00 was placed in escrow by Russell. Part of the agreement was that Russell would find a surveyor and Funderburk would pay for the cost of surveying the outside perimeter. Gwen Huddleston surveyed the tract, both the outside perimeter and internal tracts of approximate acre. The cost of the internal survey was to be borne by Russell. Funderburk paid Huddleston's entire bill of $940.00 just a few days before the trial. He stated that the closing on the Russell contract never did take place.

Next, George E. Kennedy, Jr., of Kennedy Real Estate, testified that Russell had entered into a contract with Funderburk for the purchase of the approximately 140–150 acres on Lake Tawokani and that Russell had deposited with him $1,000.00 of the $20,000.00 down payment, the balance due within ninety days of closing. He said that a closing date was never set because they had not received the remaining $19,000.00, even though the contract provided for payment ". . . on or before 90 days from the date of closing." However, the survey and title opinion also had to be completed before a closing date could be set. He also recalled discussing the survey with Russell and it was agreed that Russell could select a surveyor to lay out his plats and also do the outside perimeter with Funderburk paying for the cost of the outside perimeter. On July 1, 1975, he stated that he and D. W. Campbell of his office had had a discussion with Russell concerning the requirement for him to disclose liens, adverse claims, and interest held by other parties. They had had several calls of inquiry from different people and as a result thereof had informed Russell that he should disclose to people that he had a contract and did not actually own the land, ". . . but would receive the land as soon as he paid X number of dollars for a release." While this had not been past policy it was a requirement learned from attendance at a seminar conducted by Housing and Urban Development.

Campbell testified that following inquiry by a man named Gil Buck of Dallas he and

Kennedy went out to Terra-Mar Estates and told Russell that ". . . he should give a full disclosure to all of these people he was dealing with on what he was doing, and he informed us he had a way of doing business and he would do business his way, and we could do business our way." Russell was informed that he could not sell the lots because they had not been surveyed at that point. Following that visit, Russell called their office and asked that if inquiries were made that they should say that he owned the property and Russell was informed that they would not do so because he did not own the property.

The defense did not present any witnesses and the court found appellant not guilty in Cause No. F75–12165–MP, apparently for the failure of the State to prove venue. However, the court found the evidence sufficient to show that the offense of theft had been committed in Van Zandt County and entered an order revoking his probation. The court noted that appellant apparently through his family had made restitution of over five thousand dollars before reducing punishment from five to three years.

It is true that appellant had entered into a contract for the purchase of Terra-Mar Estates. The situation in the instant case differs from that found in *Bearden v. State*, 487 S.W.2d 739 (Tex.Cr.App.1972), because appellant was not required to deliver a deed to Dunlap at the time of the signing of the contract of sale between them. His contract with Dunlap required him to deliver the deed clear of encumbrances when Dunlap had paid in full the purchase price of the property. There is no showing in this record that Russell would not have been able to perform, thereby distinguishing his situation from *Bearden* where Bearden had a duty to deliver a deed and was unable to do so. Further, Russell could properly call himself an owner. "The meaning of the term 'owner' is varied and depends in a great measure on the manner of its use. In common speech it is most often used to designate the person in whom the legal or equitable title rests, as distinguished from a mere occupant or tenant. When used alone it imports an absolute owner or one who

has complete dominion of the property owned, as the owner in fee of real property. It is often used to characterize the possessor of an interest less than that of absolute ownership." 63 Am.Jur.2d, Property, Section 32. It appears that Russell did have an equitable interest in the property.

Appellant's act of deception did not lie in his claiming to be the owner, but in his failure to make disclosure of existing liens, security interest, and other adverse claims which might serve as a detriment to a buyer's enjoyment of the property. V.T.C.A., Penal Code, Section 31.03, provides in appropriate part:

"(a) A person commits an offense if, with intent to deprive the owner of property:

"(1) he obtains the property unlawfully; . . .

"(b) Obtaining or exercising control over property is unlawful if:

"(1) the actor obtains or exercises control over the property without the owner's effective consent; . . ."

V.T.C.A., Penal Code, Section 31.01, provides that consent is not effective if induced by deception. In that same section, "deception" is defined in Section 31.01(2)(D), as follows:

"(D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or . . . ."

■ The gravamen of appellant's offense is his failure to disclose existing liens and security interest in the property he was attempting to sell. The explanatory comment following Section 31.03 in 2 Branch's 3d Ed. reads as follows:

"Consent is not effective if induced by deception. 'Deception' is defined in Section 31.03[1](2). As in present law, the victim's consent must result from his re-

liance on the deception, i. e., he would not have consented had he known the truth. It is not theft if the victim knows the truth and knows the actor is lying but nonetheless agrees to the transaction. Applying the culpable mental states to this concept, the deception must be intentional and for the purpose of inducing consent.

"Conduct which falls within the definition of 'deception' requires, with one exception, that the actor take some affirmative action that conveys a materially false impression that is 'likely to affect the judgment of another.' The one exception is in subsection (b) of Section 31.01(2) which requires the disclosure of liens, security interest, adverse claims, and other legal impediments to enjoyment before transferring or encumbering property, whether or not valid and whether nor not same is a matter of official record. To this extent this is a change from present law."

Appellant's contention is overruled.

He also contends that the trial court's judgment of not guilty in Cause No. F75–12165–MP was a bar to the entry of a subsequent order revoking probation on the basis of the same alleged offense. His contention is without merit.

■■■ This is is a revocation proceeding and as such is not a criminal prosecution. *Barrow v. State*, 505 S.W.2d 808 (Tex.Cr. App.1974). The proceeding itself takes the form of a trial, with the presence of witnesses, and the introduction of evidence. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Ex parte Shivers*, 501 S.W.2d 898 (Tex.Cr.App.1973). The principal difference in a criminal prosecution and a revocation hearing is the degree of proof required. Acquittal in a criminal proceeding merely determines that guilt was not proved beyond a reasonable doubt while in a revocation proceeding proof need not be beyond a reasonable doubt but only by a preponderance of the evidence. *Kelly v. State*, 483 S.W.2d 467 (Tex.Cr.App.1972). See *Scamardo v. State*, 517 S.W.2d 293 (Tex.Cr.App.1974). There are also other differences such as the uncorroborated testimony of an accomplice will not support a conviction standing alone in a criminal prosecution while a revocation of probation may be based on such testimony. *Moreno v. State*, 476 S.W.2d 684 (Tex.Cr. App.1972).

■■■ The federal constitution as well as the Texas Constitution prohibit placing an accused twice "in jeopardy" for the same offense. Thus, in criminal cases in which an individual has once been hailed before a jury or a judge and found innocent, res judicata, including collateral estoppel, rests upon the double jeopardy clause of the Fifth Amendment and prevents a second prosecution for the same conduct or subject matter. Obviously that is not the situation in a revocation proceeding. It is not a "prosecution." Appellant's conduct is being considered in view of the conditions imposed upon him under the terms of his probation. A finding that he has not abided by those conditions results only in his commencement of an imprisonment term for an offense for which he was previously convicted. Revocation of probation does not place a defendant in jeopardy twice for the same crime. *Valdez v. State*, 508 S.W.2d 842 (Tex.Cr.App.1973). Nor does there need to be a trial and a valid conviction for the offense which serves as the basis for the revocation. *Vance v. State*, 485 S.W.2d 580 (Tex.Cr.App.1972).

The judgment of not guilty in Cause No. F75–12165–MP was resultant from the trial court's finding that the State had not proved the indictment in that cause beyond a reasonable doubt. The record reveals that in fact the judgment was entered because the State failed to prove proper venue. The record reflects that the motion to revoke was amended to reflect that the alleged offense had occurred in Van Zandt County instead of Dallas County and no objection was made. An order revoking probation was entered.

■■■ We hold that appellant's acquittal in Cause No. F75–12165–MP did not act as a bar to using the same offense as a basis for

revoking probation. Appellant has not been twice placed in jeopardy for the same offense.

No abuse of discretion having been shown, the motion for rehearing is overruled and the judgment is affirmed.