Affirmed and Memorandum Opinion filed October 17, 2006








Affirmed
and Memorandum Opinion filed October 17, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00535-CR

____________

 

TED EMIL DAHL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 337th
District Court

Harris County, Texas

Trial Court Cause No. 1002197

 



 

M E M O R A N D U M   O P I N I O N

Appellant Ted Emil Dahl
was convicted of felony theft of property in the amount of $200,000 or more and
sentenced to fifty years= confinement.  In three issues, appellant challenges the
legal and factual sufficiency of the evidence supporting his conviction.  We
affirm.               

I.  Factual and Procedural Background








This case stems from a
family dispute over a home which has been the subject of several legal
proceedings.  The dispute began on July 22, 1988 when Rosalie M. Dahl (ARosalie@) executed a warranty deed (A1988 deed@) granting two undivided interests in
her home on 1006 Fries Road in Houston, Texas:  one to her daughter, Arleen
Dahl Dillon, and the other to her daughter, Karen R. Moszkowicz, and
son-in-law, Dominik Moszkowicz (collectively Agrantees@).  Some years later, in 1996,
Rosalie obtained a final judgment against the grantees reforming the 1988 deed
to grant Rosalie a life estate in the property and designate the grantees as
remaindermen in fee simple.  Rosalie thereafter executed a warranty deed granting
her interest in the property to the Rosalie Dahl Estate Trust (ATrust@); appellant, her son, acted as
trustee.  On September 6, 2001, the Trust obtained a final judgment (A2001 judgment@) against the grantees voiding the
1988 deed due to a defective legal description of the property and finding that no
legal title to the property had passed.  The grantees then timely appealed the judgment to this
court.  At no point did the grantees post a supersedeas bond to suspend
execution or sale of the property during the pendency of the appeal.    

On March 27, 2003, we
held that the trial court erroneously declared the 1988 deed void and ordered
the trial court to reform the deed to reflect the accurate legal description of
the property.  See Dillon v. Rosalie Dahl Estate Trust, No.
14-01-01240-CV, 2003 WL 1565959, at *5 (Tex. App.CHouston [14th Dist.] Mar. 27,
2003, pet. denied) (mem. op., not designated for publication).  We expressly
held the Areformation is retroactive to July 22, 1988 to effect
the intent of Rosalie Dahl at the time she executed the deed@ and incorporated
Rosalie=s life estate in
the property pursuant to the 1996 judgment.  Id.  Consequently, the
reformation reinstated the grantees= remainder
interests in the property.  We issued a final mandate on February 3, 2004.








This
appeal concerns appellant=s sale of the Fries Road property
subsequent to our holding in Dillon.  On June 5, 2003, the Texas Department of
Transportation and the State of Texas agreed to purchase the property from
appellant and the Trust for use in an ongoing highway expansion project. 
Commonwealth Land Title Company of Houston, Inc. (ACommonwealth@) acted as the State=s title insurer in the transaction. 
Pursuant to its procedures, Commonwealth attempted to verify who held title to
the property and determine if any encumbrances would preclude title insurance
coverage or closing of the sale.  As of March 24, 2003, Commonwealth had
determined that either the grantees (as remaindermen) or appellant (as trustee)
held record title in fee simple.  Commonwealth=s records showed a lis pendens
pertaining to the lawsuit seeking to void the 1988 deed and stated, AUntil a final, non-appealable
Judgment has been entered in said Cause, all parties to the suit must join in
any conveyance . . . .@  The records further revealed an outstanding lien on the
property executed by the grantees to secure payment for legal fees in a suit
involving the property.  

However, by the closing
date on July 14, 2003, Commonwealth had amended its records to reflect the
following:  (1) appellant, as trustee, held fee simple title to the property
for the Trust outright and (2) the lis pendens had been released due to the
2001 judgment.  Susan Simmons (ASimmons@), an escrow officer and closer for Commonwealth,
testified that Commonwealth made the above changes based on representations
appellant made to her in phone conversations and fax transmissions from May 28,
2003 to July 14, 2003.  In these communications, appellant told Simmons that Athe suit involving
his sisters had been settled@ and that he owned and had the right to
sell the property.  To back up his claims, appellant repeatedly faxed her
copies of the 2001 judgment, along with findings of facts and conclusions of
law, in which the trial court effectively voided the grantees= remainder interests.  Simmons
testified that appellant never told her that any of the other parties mentioned
in prior deeds or documents retained an interest in the property and failed to
mention that the Trust, or Rosalie, as beneficiary, held only a life estate. 
Simmons further testified, and appellant admitted, he never disclosed to her or
others involved in the transaction that the 2001 judgment had been appealed or
reversed on appeal.  








At
closing, Simmons wrote
appellant a check for $510,707.35, the agreed upon sales price of $570,000 minus
Commonwealth=s expenses and fees.  Along with other closing documents, appellant signed an
affidavit declaring he knew of no adverse claims to the property.  Simmons testified she would not have
closed the sale or written a check to appellant had she known about the Dillon
decision.  After the closing, with the help of appellant, Rosalie withdrew the
sale proceeds from the Trust bank account in cash, all of which has since
disappeared after Rosalie purportedly lost it in a fraudulent investment
scheme.

Thereafter,
a grand jury indicted appellant for theft by deception of an amount $200,000 or
more, namely the sale proceeds from appellant=s sale of the 
Fries Road home.  The indictment named Simmons as the complainant and owner of
the sale proceeds and alleged the following theories of deception by appellant:

[1] by selling or otherwise transferring or
encumbering property without disclosing a lien, security interest, adverse
claim, or other legal impediment to the enjoyment of the property, and/or [2]
by creating or confirming by words or conduct a false impression of law or fact
that was likely to affect the judgment of the Complainant in the transaction
which the Defendant did not believe to be true, and/or [3] by failing to
correct a false impression of law or fact that was likely to affect the
judgment of the Complainant in the transaction which the Defendant did not
believe to be true.  

Appellant now appeals his conviction, asserting the
evidence is legally and factually insufficient to prove that:  (1) Simmons
owned the sale proceeds, (2) appellant had the requisite intent to deprive
Simmons of the sale proceeds, and (3) appellant acquired or exercised control
over the proceeds without Simmons=s effective
consent.

II.  Standard of Review








 In evaluating a legal-sufficiency claim
attacking a jury=s finding of guilt, we view the evidence in
the light most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d
103, 111 (Tex. Crim. App. 2000).  We do not ask whether we believe the evidence
at trial established guilt beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318B19 (1979).  Rather, we determine only
whether a rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt.  Cardenas v. State, 30 S.W.3d 384, 389
(Tex. Crim. App. 2000).  In our review, we accord great deference A >to the
responsibility of the trier of fact [to fairly] resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.= @  Clewis v.
State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996) (quoting Jackson,
443 U.S. at 319).     In conducting
a factual-sufficiency review of the jury=s determination,
we do not view the evidence Ain the light most favorable to the
prosecution.@  Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997).  Instead, we view the evidence in a neutral light and inquire
whether the jury was rationally justified in finding guilt beyond a reasonable
doubt.  Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  We
may find the verdict is factually insufficient in two ways.  First, when
considered by itself, the evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Id.  Second,
after weighing the evidence supporting the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  Our evaluation should not intrude upon the fact-finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  Cain,
958 S.W.2d at 407.  

III. 
Analysis

A person commits theft by unlawfully
appropriating property with the intent to deprive the owner of the property.  Tex. Penal Code Ann. ' 31.03(a) (Vernon Supp. 2005). 
Appropriation is unlawful if performed without the owner=s effective consent.  Id. ' 31.03(b)(1).  Consent is ineffective
if induced by deception.  Id. ' 31.01(3)(A) (Vernon Supp. 2005). 

A.  Ownership        








Appellant first
challenges the legal and factual sufficiency of the evidence to show that
Simmons, the complainant named in the indictment, was the Aowner@ of sale proceeds
from the purchase of the home.[1] 
The Texas Penal Code defines an Aowner@ as someone who Ahas title to the property, possession of the property,
whether lawful or not, or a greater right to possession of the property than
the actor.@  Tex. Penal Code Ann. ' 1.07(a)(35) (Vernon Supp. 2005).  APossession@ means actual
care, custody, control, or management.  Id. ' 1.07(a)(39). 
Thus, any person who has a greater right to the actual care, custody, control,
or management of the property than the defendant can be classified as the Aowner.@  Alexander v.
State, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988).  The prosecution may
demonstrate proof of ownership by circumstantial evidence.  Jordan v. State,
707 S.W.2d 641, 644B45 (Tex. Crim. App. 1986).

At trial, Simmons described
Commonwealth=s procedure for handling sale proceeds in transactions where the State of
Texas purchases property as follows: 

A:        The State has the checks payable to both the
property owner and Commonwealth Title.  The property owner endorses it over to
me and I put it in my bank account.  And then I disburse the funds, having to
pay off anything that has to come out of thoseCthose proceeds.  If there are delinquent taxes or liens or anything
like that on the property that has to come out of the sales price. 

Q:        So it goes into Commonwealth=s bank account; is that right?

A:        Correct.

Q:        Becomes Commonwealth=s property?

A:        It=s
the escrow account=s, yeah . . .

Q:        And you disburse the money you said yourself
fromCfrom that account?

A:        Correct.

 








Pursuant to Commonwealth=s procedure, appellant endorsed the
check from the StateCpayable to himself and CommonwealthCover to Commonwealth so Simmons could
complete the transaction.  At that point, Simmons had custody over the sale
proceeds and controlled the funds in that she had the authority as escrow
officer and closer to deduct Commonwealth=s expenses and fees.  Only then, and
through Commonwealth=s bank account, did Simmons disburse the remaining funds to
appellant.  That Simmons had discretion to subtract amounts for delinquent
taxes, liens, and the like further evidences her right of control over the funds. 
Indeed, appellant could not obtain the funds from Simmons until she performed
this screening function.  As such, substantial evidence exists that Simmons had
a greater right to the actual care, custody, control, and management of the sale proceeds than appellant
and thus became the owner of the proceeds.  See Chowdhury v. State, 888 S.W.2d 186, 187 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d) (holding that district sales manager
of convenience store chain having supervisory authority over area stores and
money transactions therein had greater right to possession of money in the
store than defendant store manager); see also Smith v. State, No. 14-95-01354-CR, 1998 WL 724601,
at *4B5 (Tex. App.CHouston [14th Dist.] Oct. 8, 1998,
pet. ref=d) (not designated for publication)
(holding that insurance claims representative having authority to settle claims
and issue checks had greater right to possession of claim check than defendant
requesting claim check); cf. Grant v. State, No.
14-01-00475-CR, 2002 WL 835016, at *4 (Tex. App.CHouston [14th
Dist.] May 2, 2002, pet. ref=d) (not designated for publication)
(affirming theft conviction where title insurance companies were considered
owners of proceeds from the sale of property).[2]  

Viewing the evidence in a light most
favorable to the verdict, we conclude a reasonable trier of fact could have
found beyond a reasonable doubt that Simmons had a greater right to possession
of the sale proceeds and, therefore, was the owner of the proceeds. Viewing the
same evidence in a neutral light, we conclude the jury was also rationally
justified in finding Simmons was the owner of the sale proceeds.  We overrule
appellant=s first issue.  

 

 








B.  Intent to Deprive 

Appellant next
argues the State failed to demonstrate legally or factually sufficient evidence
of intent to deprive.  AA person acts
intentionally, or with intent, with respect to the nature of his conduct or to
a result of his conduct when it is his conscious objective or desire to engage
in the conduct or cause the result.@  Id. ' 6.03(a) (Vernon
2003).  The Penal Code
defines Adeprive@ in part as Ato withhold
property from the owner permanently@ or Ato dispose of
property in a manner that makes recovery of the property by the owner unlikely.@  Id. ' 31.01(2)(A), (C)
(Vernon Supp. 2005).  The fact-finder determines intent to deprive from the
words and acts of the defendant and the surrounding circumstances.  Winkley
v. State, 123 S.W.3d 707, 713 (Tex. App.CAustin 2003, no
pet.) (citing Banks v. State, 471 S.W.2d 811, 812 (Tex. Crim. App.
1971)).  Although the State need not prove actual deprivation to prove intent
to deprive, evidence of actual deprivation may constitute evidence of intent to
deprive.  Rowland v. State, 744 S.W.2d 610, 612 (Tex. Crim. App. 1988). 

          Appellant
maintains that Anothing was deprived from the complainant@ because Commonwealth,
after extracting its fees from the sale proceeds, was not out any money.  Thus,
appellant reasons, insufficient evidence exists to show intent to deprive, as A[d]eprivation of property from the
rightful owner, without the owner=s consent, is the crucial element of
theft.@  We disagree with this argument because it
focuses on the fees Simmons extracted for Commonwealth and assumes someone
other than Simmons owned the remaining sale proceeds.  However, as noted above,
Simmons was the Aowner@ of the entire
sale proceeds for the operative period of time.   








Furthermore, the
record contains substantial evidence from which a jury could infer appellant
intended to deprive Simmons of the sale proceeds.  Appellant repeatedly
represented to Simmons that the suit over the property had been settled and
that he owned and could sell the property, which Simmons relied on in
transferring the remaining proceeds over to him.  He then helped Rosalie
withdraw the entirety of the proceeds in cash, all of which has now disappeared
permanently or in such a manner making recovery unlikely.  Appellant=s words and
actions, along with the actual deprivation from Simmons of the sale proceeds,
are evidence of his intent to deprive.  See Rowland, 744 S.W.2d at 613
(holding that deceiving truck owner into allowing defendant to borrow truck and
failing to return truck as promised constituted circumstantial evidence of
intent to deprive); see also Ieremia v. State, No. 08-00-00380-CR, 2002
WL 1939154, at *5 (Tex. App.CEl Paso Aug. 22, 2002, pet. ref=d) (not designated
for publication) (holding that obtaining payments from school district through
deception and withdrawing such payments from bank account shortly thereafter
constituted actual deprivation sufficient to show intent to deprive). 

Viewing
the evidence in a light most favorable to the verdict, we conclude a reasonable
trier of fact could have found beyond a reasonable doubt that appellant
intended to withhold property from Simmons
permanently or to dispose of the property in a manner making recovery unlikely. 
Viewing the same evidence in a neutral light, we conclude the jury was also
rationally justified in finding appellant had the requisite intent to deprive. 
We overrule appellant=s second issue.  

C.  Effective Consent

In
his third and final issue, appellant challenges the legal and factual
sufficiency of the evidence to show he appropriated the sale proceeds without
Simmons=s
effective consent.  Consent by the owner becomes ineffective where induced by
deception. 
Tex. Penal Code Ann. ' 31.01(3)(A).  The Penal Code defines Adeception@ to
include:   

(A)
creating or confirming by words or conduct a false impression of law or fact
that is likely to affect the judgment of another in the transaction, and that
actor does not believe to be true; 

(B)
failing to correct a false impression of law or fact that is likely to affect
the judgment of another in the transaction, that the actor previously created
or confirmed by words or conduct, and that the actor does not now believe to be
true; [or] . . . 

(D)
selling or otherwise transferring or encumbering property without disclosing a
lien, security interest, adverse claim, or other legal impediment to the
enjoyment of the property, whether the lien, security interest, claim, or
impediment is or is not valid, or is or is not a matter of official record.  

Id. '
31.01(1)(A)B(B), (D). 








Appellant
contends he did not fail to disclose an adverse claim to the property under section 31.01(1)(D) because he disclosed to
Simmons Athe
existence of the dispute over the
ownership of the property@ by informing her of
the 2001 final judgment voiding the grantees=
remainder interests.  The State counters that appellant failed to disclose an
adverse claim by admittedly neglecting to disclose both that the grantees had
appealed the 2001 final judgment and that we reversed the judgment nearly four
months before the closing date.  See Dillon, 2003
WL 1565959, at *5.  The
Court of Criminal Appeals upheld a finding of theft by deception under similar
circumstances in Russell v. State, 551 S.W.2d 710, 713B14
(Tex. Crim. App. 1977).  There, the defendant contracted to sell property
without having clear title and obtained a down payment from the prospective
purchaser without disclosing the existence of any adverse claims or liens.  Id.  
The court held the defendant committed theft by deception by failing to
disclose liens and security interests in the property he attempted to sell.  Id.
at 713B14.  In so holding, the court noted the affirmative duty to
disclose legal impediments to the enjoyment of property before transfer
operates regardless of whether such impediments are valid or a matter of public
record.  Id. at 714.     

Like the defendant in Russell, appellant knew of a
legal impediment to enjoyment of the property he attempted to sell, as he was
aware of his grantees= appeal and of the Dillon
decision.  Moreover, he knew of his duty to disclose such an adverse claim, as
did the defendant in Russell, because he signed an affidavit at closing
declaring he had no knowledge of adverse claims to the property.  Further,
although appellant did disclose to Simmons the existence of the 2001 judgment,
his repeated, unequivocal assurances that such dispute was Aover@ were
clearly false.  Accordingly, the evidence was legally and factually sufficient
to support a finding that he induced consent by deception.  








Appellant further claims he believed he had the authority to
sell the property Apending final
resolution of the appeal@ because his mother had
at least a life estate in the property, the grantees posted no supersedeas bond
to suspend enforcement of the 2001 judgment, and we had not yet issued a
mandate for Dillon by the closing date.  Therefore, appellant reasons,
the evidence is legally and factually insufficient to show that he did not
believe to be true the fact he had authority to sell the property under
sections 31.01(1)(A) and (B).  Where disjunctive theories are submitted to the
jury, and the jury renders a general verdict of guilty, such verdict should be
affirmed as long as there is sufficient evidence to support one of the theories
presented.  Guevara v. State, 191 S.W.3d 203, 207B08
(Tex. App.CSan Antonio 2005, pet. ref=d). 
Accordingly, given our finding above that legally and factually sufficient
exists to support a finding of theft by deception under section 31.01(1)(D), we
need not address his sufficiency challenges to alternative theories of
deception. 

 Viewing the evidence in a
light most favorable to the verdict, we conclude a reasonable trier of fact
could have found beyond a reasonable doubt that appellant unlawfully appropriated the property without Simmons=s
effective consent because of his failure to disclose an adverse claim. 
Viewing the same evidence in a neutral light, we conclude the jury was also
rationally justified in finding appellant unlawfully appropriated the property without effective
consent.  We overrule appellant=s final issue.  

We affirm the trial court=s
judgment.      

 

 

 

/s/        Leslie Brock Yates

Justice

 

Judgment
rendered and Memorandum Opinion filed October 17, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Seymore.

Do
Not Publish C
Tex. R. App. P. 47.2(b).

 









[1]  Simmons is a Aspecial
owner@ of the sale proceeds.  AA >special owner= is
an individual who is in custody or control of property belonging to another
person.@  Harrell v. State, 852 S.W.2d 521, 523 (Tex.
Crim. App. 1993).  When a corporation is the owner of the property that has
been stolen, it is the preferable pleading practice to allege special ownership
in a natural person acting for the corporation.  Simpson v. State, 648
S.W.2d 1, 2 (Tex. Crim. App. 1983).  Appellant appears to concede this point,
as he names Simmons and Commonwealth interchangeably throughout his brief in
complaining that neither owned the sale proceeds.  





[2]  Appellant cites Freeman v. State, in which
the Court of Criminal Appeals held that where two parties have competing equal
possessory interests in the property at the time of the actual commission of
the offense, the State must prove beyond a reasonable doubt that the complainant
in fact had a greater right to possession than the defendant.  707 S.W.2d 597,
604 (Tex. Crim. App. 1986).  Appellant=s
reliance on Freeman is misplaced.  The critical fact in Freeman was
that both the defendant cashier and the complainant security guard had
competing equal possessory interests in the property at the time of the offense
because they were both employees of the same store and neither position had any
discernable superiority as to possession of store merchandise.  See
generally Long v. State, 7 S.W.3d 316, 321 (Tex. App.CBeaumont 1999, no pet.) (noting the unique nature of
the employee relationship in Freeman and opining that such narrows Freeman=s application regarding Aowner[ship]@ in theft cases).  Here, as explained above, appellant
and Simmons did not have competing equal possessory interests at the time of
the offense, which was when appellant obtained the funds from Simmons. 
Simmons, in accordance with Commonwealth=s
procedure, had custody of the money and controlled it to the extent she had
discretion to deduct fees and other amounts to account for encumbrances.  Such
authority gave Simmons a greater right to possession of the proceeds at the
time she wrote the check to appellant.