NUMBER 13-11-00693-CR
# COURT OF APPEALS
# THIRTEENTH DISTRICT OF TEXAS
# CORPUS CHRISTI - EDINBURG


**ERICK SALINAS,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                   **Appellee.**

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Benavides**

This case arises from a revocation of a community supervision sentence for attempted capital murder. By six issues, Appellant Erick Salinas contends the following:

(1) the trial court abused its discretion in revoking Salinas's community supervision despite the jury's acquittal of charges alleged to have occurred while he was on probation;

(2) the jury's acquittal based on the affirmative defense of necessity precluded the court from using it as a basis to revoke his community supervision;

(3) appellee, the State of Texas, did not prove by a preponderance of the evidence that Salinas violated any of the terms of his community supervision;

(4) the trial court erred in denying Salinas's motion for new trial following the probation revocation hearing;

(5) Salinas's double jeopardy rights were violated when the trial court based its decision to reverse his community supervision on an acquitted and jury-sanctioned verdict; and

(6) collateral estoppel prevented appellant from being retried in his probation revocation hearing after he was acquitted on a necessity defense.

## I. BACKGROUND

### A.    The Underlying Offense

On March 2, 2009, Salinas was charged with attempted capital murder in a Hidalgo County District Court in cause number CR-3983-08-E.[1] He was placed on deferred adjudication probation, and the trial court sentenced him to ten years of community supervision.[2]  The terms of his community supervision, among others,

---

[1]  Salinas had also been charged with the offense of evading arrest with a motor vehicle at this time, but the trial court dismissed this count.

[2]   Salinas's indictment in this case revealed that Salinas, with the specific intent to commit the offense of capital murder, drove his car at a high rate of speed towards Officer Jose Anaya, a City of Alton peace officer.

included that he could not commit an offense against the State of Texas, and had to complete 360 hours of community service and pay certain fees and expenses.

**B.    The Subsequent Offense**

On March 24, 2010, while on community supervision for the underlying attempted capital murder offense, Salinas was involved in a fatal traffic accident on Tenth Street in McAllen, Texas.   According to his written statement, Salinas reported that the incident's events began when he received a call from someone named "Joe" at 5:00 p.m. that day. Joe asked Salinas to pick up a Ford F-250 pickup truck from the parking lot of a store called "Fallas Paredes" and asked him to drive it to a local Whataburger restaurant. Salinas agreed to do the favor.   When Salinas arrived at the Fallas Paredes store, he identified the white F-250 he was supposed to drive.   He noticed a white Chevy Silverado truck parked next to it, and when he saw that the people from the Silverado were looking into the driver's side window of the white F-250, he deduced that they might be trying to steal it.

After the Silverado drove away, Salinas retrieved the keys to the white F-250 (they had been hidden in the gas cap) and began to drive away.   Almost immediately, Salinas noted that the Silverado pickup truck started following him, along with a black Ford F-250.   Salinas made lane changes, and the Silverado and black F-250 made those same changes with him.   At one point, Salinas applied his brakes; the black F-250 also braked.   Salinas then made a u-turn.   The black F-250 and Silverado pickup truck mirrored the u-turn driving maneuver.   The Silverado pickup also tried to cut him off at this point.

3

When Salinas next checked his rearview mirror, he reported that he saw the person sitting in the passenger side of the black F-250 aiming a black handgun at him. The passenger fired the gun. Salinas then pressed on the gas pedal and struck the Silverado pickup, which was now in front of him. Salinas reported that he rapidly accelerated and began running red lights on Tenth Street, as he was afraid that he was going to be shot and killed. He honked his horn as he approached intersections so that traffic would move out of the way. At the intersection of Tenth Street and Business Expressway 83, he broadsided a minivan. He jumped out of the car after the collision and began running. He sought refuge at a nearby church, where police officers later picked him up.

The Gonzalez family was traveling in the minivan that Salinas hit. Lori Gonzalez, a wife and mother, was killed instantly in the collision. Lori's husband, Jose de Jesus, and their fifteen-year-old daughter, Adriana, sustained serious injuries in the crash. In connection with this accident, Salinas was charged with manslaughter, aggravated assault, and aggravated assault with a deadly weapon. *See* TEX. PEN. CODE ANN. §§ 19.04, 22.02(a)–(b) (West 2011). However, after a jury trial, Salinas was acquitted of all charged offenses on the affirmative defense of "necessity." The "necessity" defense provides that conduct is justified if:

(1)    the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2)    the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3)    a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

4

TEX. PEN. CODE ANN. § 9.22 (West 2011).

## C.      The Motion to Revoke Salinas's Community Supervision

The State subsequently filed a motion to revoke Salinas's community supervision on trial court cause number CR-3983-08-E, the attempted capital murder offense from 2009.    The State alleged three violations of the community supervision terms in its motion:    (1) that Salinas committed an offense against the State when he caused Lori Gonzalez's death and the injuries to her husband Jose and daughter Adriana in the March 24, 2010 vehicle accident, (2) that Salinas only completed half of the 300 hours of community service to which he was sentenced, and (3) that Salinas had not paid $29 of community supervision fees and $197 in court costs.

At the hearing on the motion to revoke, the State argued as follows:

> This Defendant was placed on deferred adjudication on March the 2nd 2009.    And in that interim, Judge, he engaged in activity that led to Lori Gonzalez's death, and serious injuries to her husband and daughter.    And it is the State's position, Judge, that he's been given an opportunity already.    And to give him another opportunity at this point in time, Judge, would in a sense just be a slap in the face of the victim, Your Honor.

> And also, I think it would to a certain extent, put the public at risk again.

Salinas offered different evidence into the record.    Through the testimony of his probation officer, Hidalgo County Community Supervision Officer Suzy Zuniga, Salinas established that he had:    (1) made "significant changes in his life"; (2) "gone to great lengths to get an education"; (3) enrolled in South Texas Vo-Tech to become a paralegal; (4) attended school every day; (5) successfully completed drug and alcohol treatment; (5) worked part-time doing yard work and construction work; and (6) fulfilled his community service hours by mowing the grounds at Anzalduas Park.    Supervision

Officer Zuniga also testified that if the accident on March 24, 2010 had never occurred, the State would not have filed the Motion for Adjudication of Guilt against Salinas.

After considering the evidence at the revocation hearing, the trial court revoked Salinas's community supervision, adjudicated him guilty, and sentenced him to forty years in the Texas Department of Criminal Justice–Institutional Division for the attempted capital murder offense in cause number CR-3983-08-E. Salinas's counsel filed a motion for new trial but it was denied.

Salinas then filed this appeal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's order revoking community supervision for an abuse of discretion. *Rickels v. State,* 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). In a community supervision revocation hearing, the State must prove by a preponderance of the evidence that the defendant violated a condition of his community supervision. *Id.* The State satisfies this burden of proof when the greater weight of credible evidence before the trial court creates a reasonable belief that it is more probable than not that the defendant has violated a condition of community supervision. *Id.* Proof of a single violation is sufficient to support a revocation. *Garcia v. State,* 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Thus, to prevail on appeal, Salinas must successfully challenge all of the findings that support the revocation order. *See id.*

## III. DOUBLE JEOPARDY

For the sake of clarity, we address Salinas's issues out of order. In his fifth issue, Salinas contends that his double jeopardy rights were violated when the trial court

6

revoked his community supervision sentence with offenses for which he was already acquitted.

## A. Applicable Law

The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Section 14 of the Texas Constitution provides the same protection, holding that "no person, for the same offense, shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. 1, § 14. In short, "in criminal cases in which an individual has once been hailed before a jury or a judge and found innocent…the double jeopardy clause prevents a second prosecution for the same conduct or subject matter." *Russell v. State*, 551 S.W.2d 710, 714 (Tex. Crim. App. 1977).

The Texas Court of Criminal Appeals has held, however, that double jeopardy is not implicated when offenses are used to revoke community supervision. *Id.*; *Ex Parte Tarver*, 725 S.W.2d 195, 197 (Tex. Crim. App. 1986). "The double jeopardy proscription of the Fifth Amendment to the United States Constitution protects an accused against being twice placed in jeopardy of punishment for 'the same offense.'" *Ex Parte Tarver*, 725 S.W.2d at 197. In revocation cases, the defendant faces the risk of being punished for his previous offense, not the offense which triggered the filing of the motion to revoke. *See id.* "He is not, therefore, being twice placed in jeopardy for the *same* offense." *Id.* (emphasis original). "The double jeopardy provisions of the Texas and the United States constitutions are not offended when evidence used in a

7

successful or unsuccessful attempt to revoke 'regular' probation or deferred adjudication probation is later used to prosecute the defendant in a different case." *Chambers v. State*, 700 S.W.2d 597, 599 (Tex. Crim. App. 1985).

> This principle applies even if the defendant was acquitted of his crime:

> The principal difference in a criminal prosecution and a revocation hearing is the degree of proof required. Acquittal in a criminal proceeding merely determines that guilt was not proved beyond a reasonable doubt while in a revocation proceeding proof need not be beyond a reasonable doubt but only by a preponderance of the evidence.

*Russell*, 551 S.W.2d at 714 (citing *Kelly v. State*, 483 S.W.2d 467, 469–70 (Tex. Crim. App. 1972); *Scamardo v. State*, 517 S.W.2d 293 (Tex. Crim. App. 1974)). Therefore, double jeopardy is not at issue even when offenses for which one has been acquitted are used in revocation proceedings. *Russell*, 551 S.W.2d at 714; *Ex Parte Tarver*, 725 S.W.2d at 197.

## B.    Discussion

Here, Salinas received a forty-year sentence for his capital murder case in cause number CR-3983-08-E, not the manslaughter and aggravated assault case for which he was acquitted.[3] *See Ex Parte Tarver*, 725 S.W.2d at 197. Salinas, therefore, was not twice placed in "jeopardy" for the same offense. *Id.* (holding that there was no risk of double jeopardy when the State used an assault crime to establish that defendant had violated the terms of his community supervision for a possession of cocaine offense). Moreover, as we pointed out earlier, it is irrelevant to the double jeopardy analysis that Salinas was acquitted of the manslaughter and aggravated assault crimes used to revoke his community supervision because of the differences in the standards of proof.

---

[3] The manslaughter case's cause number was CR-2137-10-E.

*See Russell*, 551 S.W.2d at 714; *Kelly*, 483 S.W.2d at 469–70 (holding that it was "judicially unsound to suggest that the standard of proof necessary to revoke probation should be as stringent as the one necessary to support the initial conviction").

We conclude that Salinas's double jeopardy rights were not violated when the State used the manslaughter and aggravated assault acquittal as one of the bases to revoke Salinas's community supervision in the capital murder case. We overrule Salinas's fifth issue.

## IV. COLLATERAL ESTOPPEL

In his sixth issue, Salinas argues that collateral estoppel prevented him from being retried in his probation revocation hearing after he was acquitted on a necessity defense.

### A. Applicable Law

Collateral estoppel "forbids the government from relitigating certain facts in order to establish the fact of the crime." *Ex Parte Tarver*, 725 S.W.2d at 198. It is rooted in the Fifth Amendment of the United States Constitution, and made applicable to the states through the Fourteenth Amendment. *See Ashe v. Swenson*, 90 S. Ct. 1189, 1195 (1969). In essence, this principle "protects a man who has been acquitted from having to 'run the ga[u]ntlet' a second time." *Id*. (citing *Green v. United States*, 355 U.S. 184, 190 (1957)).

In *Ex Parte Tarver*, the defendant, Tarver, received a sentence of ten years of probation for the offense of possession of cocaine. *Id*. at 196. One of the conditions of Tarver's probation was that he could "commit no offense against the laws of this or any other state or of the United States." *Id*. Over a year later, Tarver was charged with

9

assault. *Id.* The State filed a motion to revoke Tarver's probation, and at a hearing on the motion, the trial judge stated that he found "the evidence in this case to be totally incredible," pronounced the allegation that Tarver committed assault to be "untrue," and denied the motion to revoke. *Id.*

Tarver then filed an application for writ of habeas corpus in the trial court where the assault charge was pending. *Id.* He "asked that the charge be dismissed because the ruling of the district court at the probation revocation hearing represented a finding that applicant was not guilty of the charged assault." The trial court denied the requested relief, but the court of appeals reversed and the Texas Court of Criminal Appeals affirmed. *Id.* at 196–97. The court of criminal appeals held:

> To the extent that a probation revocation hearing involves a trial court acting as finder of fact, after a full hearing on an issue at which both the State and an accused are represented by counsel, the court is certainly "acting in a judicial capacity." To that extent, therefore, we must determine whether the *Ashe v. Swenson* test was met. The questions to be asked are: Has a fact issue already been determined, adversely to the State, in a valid and final judgment between the same parties? Is the State now trying to relitigate that same fact issue?

*Ex Parte Tarver*, 725 S.W.2d at 197 (citing *Ashe v. Swenson*, 90 S. Ct. 1189, 1194 (1969) (holding that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"). In the *Tarver* case, the court of criminal appeals concluded that the state was collaterally estopped from prosecuting Tarver's assault case in county court after it was found to be "not true" at a revocation proceeding. *Id.* at 200.

10

**B.     Discussion**

To begin our analysis, we start with the questions presented by the United States Supreme Court case *Ashe v. Swenson*, which addressed collateral estoppel.   *See Ashe*, 90 S. Ct. at 1194–95.   First, was a fact issue already determined, adversely to the State, in a valid and final judgment between the same parties?   The answer to this question is yes.   The jury in cause number CR-2137-10-E acquitted Salinas of the manslaughter, aggravated assault with a deadly weapon, and aggravated assault charges surrounding the death of Lori Gonzalez and the injuries to Jose de Jesus and Adriana Gonzalez.   *See* TEX. PEN. CODE ANN. §§ 19.04, 22.02(a)–(b).   Although it is undisputed that Salinas caused the accident which led to these tragedies, the jury found his conduct to be justified.   *See id.* § 9.22.   Second, was the State now trying to relitigate the same fact issue?   The answer, again, is in the affirmative.   The State, during its arguments in the revocation proceeding, argued that "it would in a sense just be a slap in the face" of the Gonzalez family to deny the motion to revoke Salinas's community supervision.   In sum, the trial court was attempting to relitigate the issue of whether Salinas had caused Lori Gonzalez's death and Jose and Adriana's injuries, when this fact issue had already been resolved by a valid and final judgment.   *See Ex Parte Tarver*, 725 S.W.2d at 198; *Ashe*, 90 S. Ct. at 1194.

We conclude that that the trial court was collaterally estopped from relitigating whether Salinas had committed manslaughter or aggravated assault in the hearing to revoke community supervision.   A jury acquitted him of these offenses on the basis of an affirmative necessity defense, and a viable judgment existed which reflected this decision.   *Ashe*, 90 S. Ct. at 1194–95.   We sustain Salinas's sixth issue.

11

## V. REVOCATION OF COMMUNITY SUPERVISION

The resolution of the double jeopardy and collateral estoppel concerns leads us to Salinas's first, second, and third issues. Salinas's alleged "offense against the State" was not the only term the State alleged Salinas violated with regard to his community supervision. The State also asserted that Salinas failed to complete his community supervision hours and pay certain court costs and program fees.

We recognize (and Salinas draws our attention to the fact) that Salinas's probation officer, Suzy Zuniga, testified that the State would never have filed a motion to revoke had the accident which killed Lori Gonzalez never occurred. We also acknowledge that it appears Salinas was making certain positive changes to his life pursuant to the terms of his community supervision. However, Salinas did not dispute the State's claims that he was still obligated to perform nearly 100 community service hours as part of his community supervision terms, or that he owed $ 226 in fees and expenses to the State. As noted earlier, proof of a single violation is sufficient to support a revocation. *Garcia,* 387 S.W.3d at 26. Based on our standard of review, we have no choice but to defer to the trial court's discretion on these issues, even if we would have decided them differently. *Rickels,* 202 S.W.3d at 763.

Therefore, we overrule Salinas's first issue, wherein he argued that the trial court abused its discretion in revoking Salinas's community supervision in spite of the jury's acquittal, and second issue, that the jury's acquittal based on the affirmative defense of necessity precluded the court from using it as a basis to revoke his community supervision. There were two other entire bases that the trial court could have used to revoke Salinas's supervision which Salinas did not successfully challenge. *Garcia,* 387

S.W.3d at 26. We also overrule his third issue, wherein he claimed that the State did not prove that he violated the terms of his community supervision by a preponderance of the evidence. Supervision Officer Zuniga's testimony established that Salinas owed community service hours and court and program fees and expenses. These assertions were not contested by Salinas.

### III. MOTION FOR NEW TRIAL

In his fourth issue, Salinas avows that the trial court erred in denying his motion for new trial following the probation revocation hearing.

An appellate court reviews a trial court's granting or denial of a motion for new trial under an abuse of discretion standard. *Holden v. State,* 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). As an appellate court, "we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *Holden,* 201 S.W.3d at 763.

Salinas offered two bases for a new trial: (1) that it was made in the interest of justice and (2) that insufficient evidence supported the judgment and sentence. Upon review of the record, and in light of our analysis that Salinas failed to challenge the evidence regarding his deficient community service hours and delinquent fees and costs, *see supra* discussion in section V, we find that the trial court did not abuse its discretion in denying this request. *See Holden,* 201 S.W.3d at 763; *Garcia,* 387 S.W.3d at 26 (noting that proof of a single violation is enough to revoke community supervision). We overrule Salinas's fourth issue.

13

## VI. Conclusion

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Concurring and Dissenting Memorandum
Opinion by Chief Justice Rogelio Valdez.

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
24th day of October, 2013.