Clarence Curtis **JORDAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 69281.

Court of Criminal Appeals of Texas, En banc.

April 16, 1986.

Mary Moore, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Eleanor M. McCarthy, Terry Wilson & Keno Henderson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(3). After finding appellant guilty the jury returned affirmative findings to the special issues under Art. 37.071(b), V.A. C.C.P. Punishment was assessed at death.

Appellant was convicted under an indictment which charged that appellant "on or about October 14, 1977 did then and there unlawfully while in the course of committing and attempting to commit aggravated robbery, intentionally cause the death of Joe L. Williams, hereafter styled the Complainant, by shooting the Complainant with a gun."

At the outset appellant contends the "evidence is insufficient to sustain an affirmative answer to special issue number two dealing with future dangerousness of appellant." See Art. 37.071, V.A.C.C.P.

In light of our holdings that the circumstances of the capital offense presented at the guilt stage can be considered by the jury, we first review that evidence in evaluating appellant's contention. See *Andrade v. State*, 700 S.W.2d 585 (Tex.Cr.App.1985); *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.

App.1983); *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr.App.1983), cert. denied 464 U.S. 1073 104 S.Ct. 985, 79 L.Ed.2d 221.

The testimony of George Harden reflected that on October 14, 1977 he was the manager of a Rice Food Market located at 8610 South Park, Houston. Appellant entered his office at the store on that date and after asking for a job application drew a pistol from his shirt and put the gun "between my eyes." In response to appellant's request, Harden gave appellant his car keys but told him that his car was in the shop. Appellant then told Harden to get up, "come to the front and give him the money." An employee, Joe Williams, entered the office and appellant pushed Williams into Harden. Appellant asked Williams to "sit down, get up, sit down, get up." After Williams stated he did not own a car after appellant had demanded his keys, appellant shot Williams in the right part of his chest. Appellant then directed Harden to go to the front and get him the money. En route to the front of the store another employee, Johnny Taylor, was encountered. Appellant put the gun behind his ear and ordered him to go to the front with Harden. Upon approaching the "courtesy booth" where the money was kept, Harden told the employee in the booth, Geraldine James, to give appellant the money. As appellant would receive bundles of bills from the booth he would order Harden to place them in a sack for him. Appellant told Harden that he was going with him, but when appellant took off running, Harden managed to get behind a drink machine. During the time the money was being passed out of the booth to appellant, "he was standing there waving the gun" and telling the people in the store "to all go to the back of the store and not come back."

Ike Warner testified that he and Laura Frank were en route to an Eckerd's Drug Store in his car in the same shopping center in which the Rice Food Market in question was located on October 14, 1977. A man identified as appellant jumped in the car with a gun in his hand and directed Warner to drive away. Appellant directed Warner as to where to go by telling him "to turn here, turn there." Appellant was carrying a money sack. After driving "five or ten minutes" appellant directed Warner to stop, appellant got out and told Warner "to take off and don't look back."

A number of employees identified appellant as the person who was the robber at the store.

Chief Medical Examiner Joseph Jachimczyk testified that Williams, a forty-year-old black male, died as a result of a .38 caliber gunshot wound to the chest.

Appellant did not offer any evidence at the guilt stage of the trial.

At the punishment stage of the trial a manager and an assistant manager of Kroger grocery stores testified that appellant conducted robberies with a gun at their stores on May 10, 1977 and October 11, 1977.

Elzie Thomas, a Rice store manager, related details of a robbery that appellant conducted at his store September 12, 1977. While Thomas did not see a gun he was forced to drive appellant in accordance with appellant's directions until appellant got out of the car.

Christopher Kress, another Rice store manager, testified as to the details of a robbery at his store on February 14, 1978. Appellant showed him his gun was loaded by spinning the chamber and saying, "You know what this gun can do." Appellant took a car belonging to Kress upon leaving the store.

The bailiff at appellant's first trial,[1] Grady Dukes, testified that as he was taking appellant to the rest room on August 8, 1978, appellant produced a sheath of some kind and threatened Dukes, "I am going to kill you, you M_____ F_____." During

---

1. The initial conviction in this cause was reversed by this Court due to the trial court's denial of appellant's challenge for cause made against a prospective juror who stated that he could not consider the minimum punishment for the lesser included offense of murder. See *Jordan v. State*, 635 S.W.2d 522 (Tex.Cr.App. 1982).

the struggle that ensued, appellant tried to take Duke's gun. The struggle ended when appellant was tackled by the trial judge.

Dr. Richard Carlson, a witness for appellant, testified that in a controlled environment and with treatment of psychotropic drugs appellant would improve and not be dangerous.

Dennis Milam, a psychiatric social worker, testifying on behalf of appellant, stated that he had seen improvement in appellant while he was in jail.

In the instant case appellant entered Harden's office under the guise of wanting a job application and shot Williams without any provocation. After taking money from the store he took an automobile at gunpoint and kidnapped its occupants until he could facilitate his escape. The record is devoid of any evidence which would reflect that appellant was acting under any other person's direction or influence. At the punishment stage of the trial evidence was admitted of four other robberies. In three of the robberies, a gun was exhibited. In addition there was evidence of an attack and threat upon a court bailiff.

We find the evidence sufficient to support the jury's affirmative answer to the question of whether there is a probability that appellant would commit criminal acts of violence in the future which would constitute a continuous threat to society.

■ In his second ground of error appellant contends that the evidence is insufficient to support a verdict of guilty of capital murder because the evidence presented on one of the elements of robbery was insufficient and not proven beyond a reasonable doubt.

The thrust of appellant's argument is that the State has failed to show that the property taken in the robbery was taken without the owner's effective consent in that ownership of the property was not shown.

V.T.C.A. Penal Code, Sec. 1.07(a)(24) defines owner, " 'owner' means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." Sec. 1.07(a)(28), supra, defines possession, " 'Possession' means actual care, custody, control or management."

The indictment did not allege the ownership of the property taken. Appellant did not file a motion to quash seeking such information. Ownership of property need not be alleged in a capital murder indictment which alleges the murder occurred during the course of a robbery. *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App. 1976).

The definition of "owner" in the court's charge tracks the definition given in the statute.

Harden, at the outset of the testimony, had identified himself as store manager on the date in question. Appellant calls our attention to the following testimony of Harden under direct examination:

"Q. Were you in charge of the store? Did you have care, and control of that money?

"A. I guess you could say to a certain extent. My job was to see that the money got from the cash register into the booth, and once it got into the booth, the courtesy booth operator was there in charge of it with exception of a case like that."

Appellant specifically directs our attention to Harden's statement, "... once it [the money] got into the booth, the courtesy booth operator was there in charge of it ...".

While Harden's testimony leaves something to be desired from the standpoint of clarity, he qualified the foregoing quoted statement by saying "with [the] exception of a case like that."

Obviously Harden considered that he had control and managerial authority over the store and its money in a "case like that" since he directed the booth operator to turn the money over to appellant. See *Cross v. State*, 590 S.W.2d 510 (Tex.Cr.App.1979). Proof of ownership may be made by circumstantial evidence, just as any other is-

sue in a criminal case. *Taylor v. State*, 508 S.W.2d 393 (Tex.Cr.App.1974); *Ceasar v. State*, 661 S.W.2d 256 (Tex.App. [1st Dist.] 1983).

We conclude that there was sufficient evidence before the jury from which it could conclude beyond a reasonable doubt that Harden was the owner of the money taken.

■ Appellant next contends "it was error to deny the motion requesting a medical examination of appellant because evidence adduced thereby may have been offered in mitigation of punishment."

Prior to trial counsel for appellant filed a motion on August 27, 1982 requesting medical examination which recited (1) "Defendant has suffered a severe blow to the skull," (2) "The undersigned is of the opinion that brain damage may have resulted from the blow," (3) "Defendant is indigent and unable to afford such expense." The motion concluded with a prayer that appellant be ordered transported to a hospital where a CAT Scan could be performed.

Appellant was examined by psychiatrists pursuant to court orders on May 18, 1978 and November 10, 1982. After a competency hearing, a jury found appellant competent to stand trial on October 4, 1983.

Appellant urges that the court's failure to grant his motion denied him effective representation of counsel and denied him due process of law. Appellant argues that denial of his motion deprived him of presenting mitigating evidence necessary in a capital murder case.

The appointment of an expert witness under Art. 26.05, V.A.C.C.P. rests within the sound discretion of the trial court. *Quin v. State*, 608 S.W.2d 937 (Tex.Cr.App. 1980); *Freeman v. State*, 556 S.W.2d 287 (Tex.Cr.App.1977).

The entire text of appellant's motion set out above failed to reflect the extent of appellant's injury, when said injury occurred, the effect of the injury, the availability of the expert desired, the cost of the expert or when the examination could be made.

As heretofore noted, Dr. Carlson and psychiatric social worker Milam testified for appellant at the punishment stage of the trial. The only suggestion that appellant makes regarding what additional evidence might have been shown as a result of the requested examination is that the denial of the motion foreclosed any probability "that Appellant could present expert evidence that he did suffer a physical as well as a mental illness."

We find that the trial court did not abuse its discretion in denying appellant's motion. Further, we conclude that the failure to grant appellant's motion did not result in appellant being denied due process of law or effective representation of counsel. Cf. *Quin v. State*, supra; *Hammett v. State*, 578 S.W.2d 699 (Tex.Cr.App.1979).

■ In his last ground of error appellant contends "It was error to refuse voir dire examination of Betty Ann Arnold."

During voir dire examination prospective juror Arnold stated, "I feel like I might have a problem with that" in response to the prosecutor's question about whether she would have any problems with a defendant's right to remain silent. In addition, Arnold stated she would like to hear both sides of the story. After additional questioning and explanation by the prosecutor that unless the State discharged its burden of proving a defendant guilty, it was the duty of the jury to find a defendant not guilty, Arnold was asked if her feeling about a defendant's right to remain silent "would prevent you from following the law as the Court would instruct you." Arnold responded, "I'm afraid that it might prevent me." At this juncture counsel for the appellant objected, "I'd like to hear what her explanation is. She told him three times I'm afraid I can't." The prosecutor responded, "If they don't have an objection, they can talk to this juror on Voir Dire." Appellant's counsel responded, "I'd like to do it right now." The court

then directed defense counsel, "Have your seat."

The prosecutor resumed voir dire examination and asked Arnold whether she would be able to follow "that spirit of the law." Arnold stated she could not say "point blank, yes" or "point blank—no" and "I am just afraid that I could not be completely fair." The court then asked Arnold if a defendant's failure to testify would affect her judgment and she responded, "Yes, it would affect my judgment." The prosecutor challenged for cause and the court excused the prospective juror. No objection was voiced by appellant to the court's action in sustaining the challenge nor did appellant make any request to voir dire Arnold.

Assuming arguendo that the exclusion of the prospective juror was improper, appellant has not preserved error on this issue since he voiced no objection to the court's action at the time the juror was excused. *Johnson v. State*, 698 S.W.2d 154 (Tex.Cr. App.1985); *Hawkins v. State*, 628 S.W.2d 71 (Tex.Cr.App.1982).

If appellant's objection is directed to the court's failure to grant him the privilege to voir dire the prospective juror in the midst of the prosecutor's examination we find neither objection nor a ruling by the court. See *Esquivel v. State*, 595 S.W.2d 516 (Tex. Cr.App.1980). We have examined *Hogan v. State*, 496 S.W.2d 594 (Tex.Cr.App.1973); *Moore v. State*, 424 S.W.2d 443 (Tex.Cr. App.1968); *Burns v. State*, 556 S.W.2d 270 (Tex.Cr.App.1977) and Art. 35.17, V.A.C. C.P., cited by appellant for the proposition that defendant in a capital case is entitled to voir dire prospective jurors individually. While we agree that this is a correct statement of the law, appellant has failed to preserve error which will avail him anything under these authorities.

The judgment is affirmed.

TEAGUE, J., dissents to disposition of Ground of Error No. 3. See *Ake v. Oklahoma*, —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).