# NO. 12-07-00475-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JESSE BUD GRAHAM,*<br>*APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jesse Bud Graham appeals his conviction for theft. After finding him guilty, the jury assessed Appellant's punishment at confinement in a state jail facility for two years. Appellant contends the evidence is factually insufficient to support the conviction. We affirm.

### BACKGROUND

Brian Crabtree was fatally electrocuted at 2:00 a.m. on April 28, 2007 while he was in the process of cutting and stealing copper wire strung on telephone polls on the premises of an abandoned hospital. When police arrived in response to a 911 call, Crabtree was on the ground at the base of a ladder, copper wire was hanging from a poll, bolt cutters lay near Crabtree's feet, and there were some freshly cut copper wire trimmings on the ground. An employee of TXU Electric, Danny Partridge, inspected the scene with officers and determined that three types of copper wire were missing. Each missing section was fifty-one feet long. The State's expert determined the value of the stolen wire to be $1,816.71.

Charity Miley, Crabtree's friend, gave police a statement later that night describing what she knew. According to her, Crabtree and Appellant planned to steal some copper wire they could sell so that Crabtree could repay a debt and Appellant could get his truck out of impound. They borrowed a friend's truck and had a bag of instruments for cutting the wire. Crabtree told her he was

going to cut a piece of wire that hung between poles. The first time they went by the hospital that night, Appellant, who thought people nearby might still be awake, was scared and did not want to get out of the truck. So they went to a store and went back to the hospital later. Miley dropped Crabtree and Appellant at the hospital at 1:00 a.m. with instructions to return in one hour. On her way back to pick them up, but before she got to the hospital, she saw Appellant, who was running and yelling. He told her what happened and they drove to the Cardinal Inn to call the police. After the police were called, Appellant left on foot and Miley went to a friend's house.

On May 8, 2007, Appellant gave a statement to police admitting that he agreed to "help [Crabtree] load something up so he could make enough money" for Crabtree to repay a debt and for Appellant to get his truck out of impound. Appellant put a ladder in the truck and they drove to the hospital. When Appellant asked what were they doing there, Crabtree told him, "This is where the copper is." Appellant asked to go to a store for a drink so they left, but went back to the hospital later. Appellant and Crabtree got out of the truck. Crabtree "crawled up a phone pole" and cut a piece of wire. He fell, going through the roof of a small building, but went back up and finished cutting. Appellant "rolled up a couple of pieces of wire he had and was going to leave." Then, he heard the sound of Crabtree being electrocuted and saw him fall to the ground. After he realized Crabtree was not going to get up, he ran to a store to use the phone. On the way to the store, he saw Miley and stopped her. He told her what happened and they went to the Cardinal Inn where someone called the police. Appellant did not return to the hospital but, a few days later, upon learning that the police wanted to talk to him, he contacted the detective investigating the theft.

FACTUAL SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant asserts that the evidence is factually insufficient to support the conviction. He argues that the State failed to establish ownership of the property allegedly stolen or that Appellant lacked permission to take the property, and failed to account for the missing wire or prove that Appellant took the wire from the premises. He implies that the missing wire could have been taken by anyone on some date prior to April 28, 2007.

**Standard of Review**

When reviewing the factual sufficiency of the evidence to support a conviction, we consider

all of the evidence in a neutral light to determine whether the evidence introduced to support the verdict, though legally sufficient, is nevertheless so weak or so against the great weight and preponderance of conflicting evidence as to render the fact finder's verdict clearly wrong and manifestly unjust. *Gamboa v. State*, No. AP-75,635, 2009 Tex. Crim. App. LEXIS 512, at *8 (Tex. Crim. App. April 8, 2009); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The reviewing court may not simply substitute its judgment for the fact finder's. *Johnson*, 23 S.W.3d at 12. Unless the record clearly reveals that a different result is appropriate, the appellate court must defer to the jury's determinations, particularly those concerning the weight and credibility of the evidence. *Id*. at 8-9. An appellate court may not find the evidence to be factually insufficient when the evidence actually preponderates in favor of conviction. *Steadman v. State*, No. PD-1311-08, 2009 Tex. Crim. App. LEXIS 466, at *11 (Tex. Crim. App. April 1, 2009).

**Applicable Law**

A person commits the offense of theft if he unlawfully appropriates property with the intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03 (Vernon Supp. 2008). The legislature gave the word "owner" as used in the theft statute an expansive meaning. It is defined as a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (Vernon Supp. 2008). "Possession" means actual care, custody, control, or management. TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp. 2008). Any issue in a criminal case may be proven circumstantially. *See Jordan v. State*, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986).

**Discussion**

The State alleged that Appellant acquired or otherwise exercised control over copper wire valued at $1,500.00 or more but less than $20,000.00 from Danny Partridge, the owner of the wire. TXU dispatched its employee, Danny Partridge, to investigate a possible fatality due to contact with its electrical wires. He observed TXU property including transformers, wires, and weatherheads, at the abandoned hospital. He described the lengths and types of wires that were missing. He testified that if someone wanted electrical service at that hospital, it would be TXU's responsibility to restore service to that building by replacing the wires that had been removed. Further, it was TXU that filed the criminal complaint for theft of the copper wire. This is circumstantial evidence that the named owner, Danny Partridge, on behalf of TXU, exercised some degree of care, custody,

3

control, or management of the stolen copper wire. *See id*. Further, even though there was no direct testimony concerning consent, under the circumstances, the jury could also infer lack of consent for Appellant and Crabtree to take the copper wire. *See Wells v. State*, 608 S.W.2d 200, 203 (Tex. Crim. App. 1980) (op. on reh'g).

Partridge, a TXU employee who had thirty four years of experience doing electrical service work, described to the jury what types of wires were missing. The jury was entitled to believe him. *See Johnson*, 23 S.W.3d at 8-9. Thus, we reject Appellant's argument that the evidence does not support "the actual property that was in fact missing or stolen." Finally, the police officers searched the hospital grounds and failed to find either the bag of tools or the long pieces of wire that were cut from the poles. According to Appellant, he and Crabtree were the only ones there from the time Miley dropped them off until Appellant left the scene. Appellant stated that he rolled "a couple of pieces of wire," yet no rolls of wire were found at the scene. Again, the jury was entitled to infer that Appellant took the bag and wire with him when he left. *See id*.; *Jordan*, 707 S.W.2d at 444-45. The evidence is factually sufficient to support Appellant's conviction for theft. We overrule Appellant's sole issue.

### DISPOSITION

We *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 6, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)