# NO. 12-08-00439-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAVID WAYNE PETERS,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

David Wayne Peters appeals his conviction of taking a wildlife resource without the consent of the landowner. On appeal, Appellant raises three issues. We affirm.

### BACKGROUND

Appellant was charged by indictment with aggravated assault,[1] and taking a wildlife resource without the consent of the landowner, a state jail felony.[2] Before trial, Appellant requested that the jury be instructed that it is an offense if a person, while hunting, kills or wounds a whitetailed deer and intentionally or knowingly fails to make a reasonable effort to retrieve the animal. Instead, the trial court's charge stated that the jury would have to find evidence beyond a reasonable doubt that Appellant did then and there intentionally or knowingly hunt, by killing a white tailed deer, on land with the knowledge that he did not have the consent of John Renfro, the owner or the agent of the owner of the land.

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2009).

[2] TEX. PARKS & WILD. CODE ANN. § 61.022(a), (c) (Vernon Supp. 2009).

At trial, John and Anna Renfro testified that they were at their house preparing to hunt when Anna heard a single shot. The Renfros then traveled the short distance to their deer stand. Once there, the Renfros discovered two beer cans at the bottom of the deer stand. Then, they climbed up the ladder to the top of the stand with John in front. When John reached the top of the ladder, he saw a man and a fallen deer. He told Anna to wait near the stand while he confronted the other man. John, who was carrying a deer rifle, asked the man his name, and Appellant identified himself. John testified that by this time, Appellant had gutted the deer and was carrying it on his shoulders. Appellant also had his rifle. John told Appellant that he needed to drop the deer. Appellant complied, and then "unshouldered" his rifle. John stated that he also "unshouldered" his rifle. According to John, Appellant walked past him, turned around, and said that he should shoot John. Both men left the area without any further interaction.

Craig Davis Anglin, the father of Appellant's girlfriend, testified that on the date of the incident, Appellant called him and stated that he was hunting in John's deer stand. Appellant and his girlfriend, April Peoples, claimed that Peoples shot the deer on Appellant's property, but that the deer ran through the woods to the Renfros' property before dying.

John reported the incident to James Barge, a Texas game warden. Barge and another game warden, Brian Heath Bragg, arrived at the Renfros' home later that evening. Barge stated that they interviewed the Renfros and investigated the area around the deer stand. Their investigation included photographing the deer, beer cans, and blood on the ground. Barge testified that he seized the two beer cans near the deer stand as evidence, and also seized a beer can found near the Renfros' driveway. Although Barge stated that he attempted to find spent casings around the deer stand, he was unable to find a recently discharged casing. Barge allowed John to store the deer in his walk-in cooler. Barge and Bragg opined that the deer was shot near where it fell based on two aspects of physical evidence: the deer's blood spray pattern, and the deer's severed spinal cord. Barge testified that he discovered the deer's blood spatter about ten yards from where the deer's "guts" were located. He opined that the blood splatter indicated the place where the deer was shot. Bragg testified that the deer's spinal cord was severed, and that the deer could not have moved after receiving such an injury.

Barge testified that he obtained a search warrant for Appellant's residence and seized a rifle that he believed Appellant used to shoot the deer. After Barge discovered blood on the stock of the seized rifle, he collected a sample of the deer in the Renfros' cooler. He also stated that he helped Beverly Villarreal, a forensic scientist for Texas Parks and Wildlife, collect a blood sample from inside the seized rifle. Further, Barge stated that Debra Walsh, a crime scene identification technician with the Lufkin Police Department, obtained a DNA sample, fingerprints, and palm prints from Appellant, and helped Barge obtain fingerprints and a DNA sample from the beer cans. Villarreal testified that the DNA profile of the deer stored in the Renfros' cooler matched the DNA profile of blood from inside Appellant's rifle. According to Walsh, the fingerprints from the beer cans did not match Appellant's prints. Pamela Mikulcik, a forensic scientist with the Texas Department of Public Safety's crime lab, testified that the DNA sample from Appellant matched the DNA samples retrieved from the beer cans.

The jury found Appellant not guilty of aggravated assault, but guilty of taking a wildlife resource without the consent of the landowner. The jury assessed Appellant's punishment at two years of confinement and a $3,000.00 fine.[3] This appeal followed.

**JURY CHARGE**

In his first issue, Appellant argues that the trial court erred by denying his written requested instruction in order to provide the jury with the legal obligations of a hunter and the law applicable to the case. The State contends that Appellant waived or abandoned his requested instruction.

**Applicable Law**

In criminal jury trials, the trial court must deliver "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). In other words, the function of the jury charge is to instruct the jury on the law applicable to the case. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). Because the charge is the instrument by which the jury convicts, it must contain an accurate statement of the law and set out all the essential elements of the offense. *Id.* A defendant must be given a reasonable opportunity to examine the

---

[3] An individual adjudged guilty of a state jail felony shall be punished by confinement in a state jail for a term of not more than two years or less than 180 days and, in addition, a fine not to exceed $10,000.00. TEX. PENAL CODE ANN. § 12.35(a), (b) (Vernon 2003).

charge and object to any errors of commission or omission. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. When a defendant has requested an instruction, and the court then modifies the charge but does not respond to the requested instruction, the requested instruction is not waived by the requesting party. *See* TEX. CODE CRIM. PROC. ANN. art. 36.15 (Vernon 2006). Instead, the defendant is deemed to have continued to urge the instruction unless the contrary is shown by the record. *See id.*

In our review, we must first ascertain if error actually occurred in the jury charge. *See Posey v. State*, 966 S.W.2d 57, 60 (Tex. Crim. App. 1998). If error occurred and was properly preserved, reversal is required if the error was calculated to injure the rights of the defendant. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). In other words, an error that has been properly preserved will require reversal if the error is not harmless. *Id.* When error has not been properly preserved, we may still review the asserted error, but require a much greater degree of harm for reversal. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). We will reverse only if the error is so egregious and created such harm that the defendant has not had a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. In other words, any unpreserved jury charge error must result in "egregious harm." *See Olivas*, 202 S.W.3d at 144; *Posey*, 966 S.W.2d at 61 n.9. In both situations, we evaluate the degree of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

## Analysis

Here, Appellant filed a written jury instruction regarding a hunter's obligation to retrieve a killed or wounded white tailed deer. The proposed jury instruction followed section 62.011 of the Texas Parks and Wildlife Code and stated as follows:

(a) Except as provided by Subsection (c), it is an offense if a person while hunting kills or wounds a game bird or game animal and intentionally or knowingly fails to make a reasonable effort to retrieve the animal or bird and include it in the person's daily or seasonal bag limit.

(b) Except as provided by Subsection (c), it is an offense if a person intentionally takes a game bird, game animal, or a fish and intentionally, knowingly, or recklessly, or with criminal negligence, fails to keep the edible portions of the bird, animal, or fish in an edible condition.

(c) It is an offense if a person while hunting kills or wounds a desert bighorn sheep, pronghorn antelope, mule deer, or white-tailed deer and intentionally or knowingly fails to make a reasonable effort to retrieve the animal or intentionally, knowingly, or recklessly or with criminal negligence fails to keep the edible parts of the animal in an edible condition.

4

TEX. PARKS & WILD. CODE ANN. § 62.011 (Vernon 2002).

During trial, the following colloquy occurred:

> The Court: …So in the charge wouldn't we eliminate catch and possess and it would be that you -- because that's what your evidence is; that he did intentionally or knowingly hunt --
>
> [State's attorney]: By killing a whitetail deer.
>
> The Court: -- by killing a whitetail deer on the land. So he hunted on the land and he killed a deer on the land.
>
> ….
>
> The Court: If we narrow it down to what the evidence has been or tends to be, then that would eliminate the need for that defense because there wouldn't be any confusion about can he be convicted for simply going on the land looking for a deer. Because they're saying he killed the deer on the Renfro land, so that's what they're trying to prove. The jury would have to believe that beyond a reasonable doubt.
>
> ….
>
> The Court: …That would be the way to clean it up and I don't think he would -- well, you say you wouldn't need that instruction if we're --
>
> [Appellant's attorney]: No, if we're just going on the knowingly hunt by killing whitetail deer, we won't need that instruction. I agree.
>
> The Court: Yeah. Okay. And from what they were putting on, I didn't think they were trying to convict him of being on the land and chasing the deer.
>
> [Appellant's attorney]: Okay.
>
> [State's attorney]: Right.

From this portion of the record, it is clear that the trial court responded to Appellant's requested instruction regarding a hunter's duty to exercise reasonable efforts to retrieve a wounded animal. Later at the charge conference, the trial court asked if there were any corrections, objections, or additions to the charge. Appellant's attorney stated, "I have no other amendments or recommendations or suggestions." From this response, it is equally clear that Appellant abandoned his request for the instruction in light of the trial court's changes to the charge.

By requiring the jury to find that Appellant shot the deer on the Renfros' property, Appellant's previously requested instruction was not the "law applicable to the case," and thus, was properly

excluded from the charge. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. Further, even if it was error to exclude this instruction, the error was not properly preserved. *See Almanza*, 686 S.W.2d at 171. Therefore, Appellant could not show reversible error unless the exclusion resulted in egregious harm. *See id.* From our review, we conclude that any error did not result in egregious harm, and thus, did not deprive Appellant of a fair and impartial trial. *See id.* Accordingly, Appellant's first issue is overruled.

**SUFFICIENCY OF THE EVIDENCE**

In his second and third issues, Appellant contends that the evidence is legally and factually insufficient to support his conviction. Specifically, Appellant argues that the evidence is insufficient to establish that Appellant killed the deer on the Renfros' property.

**Standard of Review**

Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); *Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the jury's verdict. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson*, 871 S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

In reviewing factual sufficiency, we consider all the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute, and compare it to the evidence that tends to disprove that fact. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Ortiz v. State*,

6

93 S.W.3d 79, 87 (Tex. Crim. App. 2002) (verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust"); *see Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience" or "clearly demonstrates bias." *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996).

Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. It is not enough that we might harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *See Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref'd). We cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of the conflict. *See Watson*, 204 S.W.3d at 417.

## Applicable Law

A person commits an offense if he hunts or catches by any means or method or possesses a wildlife resource at any time and at any place covered by chapter 61 of the Texas Parks and Wildlife Code unless the owner of the land, submerged land, or water, or the owner's agent, consents. *See* TEX. PARKS & WILD. CODE ANN. § 61.022(a) (Vernon Supp. 2009). Any issue in a criminal case may be proven be circumstantial evidence. *See Jordan v. State*, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986).

## Analysis

We first consider Appellant's contention that the evidence is legally insufficient. John and Anna Renfro stated that they heard a single shot and, shortly thereafter, discovered Appellant gutting a deer near their deer stand. Anglin testified that Appellant called him on the date of the incident and told him he was hunting in John's deer stand. Barge testified that he found the deer's blood splatter about ten yards from where the deer's "guts" were located. He opined that the blood splatter indicated

7

the place where the deer was shot. Bragg testified that the deer's spinal cord was severed, and that the deer could not have moved after receiving such an injury. Barge found a deer rifle at Appellant's residence, and a blood sample taken from inside the rifle matched the DNA profile of the deer discovered near the Renfros' deer stand. Further, Appellant's DNA sample matched the DNA sample taken from beer cans found at the bottom of the Renfros' deer stand. Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have found the elements of taking a wildlife resource without the consent of the landowner beyond a reasonable doubt. Therefore, the evidence is legally sufficient to support Appellant's conviction.

Having determined that the evidence is legally sufficient to support the verdict, we address factual sufficiency and consider the record in its entirety. *See Johnson*, 23 S.W.3d at 11. Contrary to the jury's verdict, Appellant and his girlfriend, April Peoples, testified that Peoples shot the deer on Appellant's property, but that the deer ran through the woods to the Renfros' property before dying. Also, Barge was unable to find a recently spent shell casing near the Renfros' deer stand. Nonetheless, we must consider this evidence in the context of the entire record. Our review of the record as a whole, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof as to render Appellant's conviction clearly wrong or manifestly unjust. *See Ortiz*, 93 S.W.3d at 87; *Johnson*, 23 S.W.3d at 11; *Jones*, 944 S.W.2d at 648. Consequently, the evidence is factually sufficient for the jury to find Appellant guilty of taking a wildlife resource without the consent of the landowner as alleged in the indictment. Accordingly, Appellant's second and third issues are overruled.

### DISPOSITION

Having overruled Appellant's first, second, and third issues, we *affirm* the judgment of the trial court.

BRIAN HOYLE  
Justice

Opinion delivered November 4, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

8