# NO. 12-08-00247-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DELBERT ALONZO KINCADE,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Delbert Alonzo Kincade appeals from his conviction of injury to a child causing serious bodily injury and serious mental deficiency. After finding him guilty, the jury assessed punishment at life imprisonment and a fine of $10,000.00. Appellant argues that the evidence is factually insufficient to support the verdict. We affirm.

### BACKGROUND

Appellant lived in an apartment with his girlfriend, S.B., and her nine month old twins, B.G. and B.B.[1] S.B. testified that, on the day of the incident, after having been home all day, she and Appellant were getting ready to take the twins to Appellant's mother's house for the night. While S.B. put the car seats in Appellant's car, Appellant and B.G., who was crying, were in the apartment alone. At trial, S.B. stated that she returned to the apartment to see Appellant spank B.G. hard, tell her to shut up and that she needs discipline, and then throw her on the loveseat. Then the baby fell to the floor and began having a seizure. B.G.'s body was stiff, and she vomited and looked to the side.

---

[1] To protect the identity of the children, in our opinion, we use an alias, i.e. a person's initials or a ficticious name, to refer to a minor, and the minor's parent or other family member. Because S.B.'s initials match those of her twin children, in the interest of avoiding confusion, we have identified her daughter as B.G. and her son as B.B.

When S.B. walked toward B.G., Appellant kicked S.B. and told her to let B.G. throw her fit. But S.B. went to B.G. and picked her up. S.B. realized that B.G. was hot so she tried to cool her down by taking off B.G.'s socks and turning on the fan. S.B. then realized that B.G. needed medical attention. S.B. held B.G. while Appellant drove them to an East Texas Medical Center (ETMC) emergency room clinic in Tyler. From there, B.G. was taken by ambulance to ETMC's main hospital.

S.B. admitted at trial that, during the investigation, she had told other versions of the cause of B.G.'s injuries. At different times, S.B. claimed that B.G. fell backwards while on the floor and started seizing, fell off the couch onto a toy, threw a fit and hit her head on the carpet, and finally, was spanked and thrown by Appellant. When asked to explain the inconsistent statements, S.B. claimed that she was afraid of Appellant. She testified that Appellant became violent when he was mad, had hit her in the past, and he told her she would be going to her own funeral if she told anyone that Appellant had injured B.G. On cross examination, S.B. admitted that she was concerned that the police may believe that she caused B.G.'s injuries.

S.B.'s mother, L.B., also testified. L.B. claimed that B.G. and B.B. would cry when Appellant was around them. On cross examination, she admitted that she had kept B.G. and B.B. until about ten days before B.G.'s seizure. She also admitted that, after B.G.'s seizure, she had told a medical staff member that she did not believe that either Appellant or S.B. would intentionally injure B.G.

Several medical care professionals testified that B.G.'s injuries were caused by abuse. Greta Sparks, the emergency clinic nurse who first saw B.G., immediately realized her condition was critical. Sparks testified that B.G. had bruises "all over her," including fresh bruises on both sides of her legs that "look like somebody's hand." She testified that B.G.'s injuries were caused by an intentional blow to the head and that B.G. was the victim of child abuse. She also testified that B.G. suffered two detached retinas, which indicated that she suffered abusive head trauma. Once stabilized, B.G. was careflighted to Children's Medical Center in Dallas.

Dr. Daniel Baber testified that B.G. was intubated to help her breathe and underwent a CAT scan, which revealed a large subdural hematoma to the brain and a skull fracture. He concluded the injuries were caused by child abuse.

2

Dr. Matthew Cox testified that B.G. had intracranial injury but no external signs of impact that would be expected from a child injured as a result of falling. He further testified that B.G.'s intracranial injuries were caused by a severe and violent trauma and a lot of force. Dr. Cox testified that B.G.'s injuries were caused by abusive head trauma. He further testified that those injuries eventually led to B.G.'s suffering a stroke and that she has permanent brain damage. Dr. Cox testified that B.G.'s injuries would have been symptomatic immediately and could have been fatal. Finally, Dr. Cox testified that B.G. was the victim of child abuse. Dr. Cox also treated B.B., B.G.'s twin brother. B.B. had three healing rib fractures and bleeding around his brain. Dr. Cox believed that B.B. had been the victim of child abuse as well.

On cross examination, Dr. Cox agreed that the seizure would not necessarily occur immediately after the abusive head trauma. But, he still maintained that B.G. would exhibit signs of injury immediately. Dr. Cox also agreed that B.B.'s injuries were much older than B.G.'s injuries.

Law enforcement officers testified similarly. Detective Paul Robeson testified that B.G. suffered abusive head trauma. While at the hospital, Detective Robeson questioned Appellant regarding the cause of B.G.'s injuries. Appellant claimed that he and B.G. were in the apartment alone when B.G. fell off the couch and began having a seizure. Appellant claimed that he was in a different room when B.G. fell, but that he heard the fall. Appellant told Detective Robeson that B.G. was spoiled and threw a lot of temper tantrums.

Detective Dennis Matthews, the lead investigator on the case, testified that the explanations given by S.B. and Appellant did not match up with B.G.'s injuries. He explained that S.B. was not entirely forthcoming because she was the victim of abuse and assault by Appellant. Detective Matthews testified that B.G.'s injuries were caused by Appellant.

Robert Harris testified on behalf of Appellant. He testified that Appellant visited his home for three or four hours in the afternoon on the day that B.G. was injured. Verina Kincade, Appellant's mother, and Brittany Singleton, the mother of two of Appellant's children, also testified. They testified that B.G. and B.B. acted fine around Appellant. They also testified that Appellant acted like a proper father to B.G. and B.B.

The jury found Appellant guilty of injury to a child as alleged in the indictment and determined that Appellant used a deadly weapon, either his hands or an unknown object, in the

3

commission of the crime. The jury assessed Appellant's punishment at life imprisonment and a fine of $10,000.00.

SUFFICIENCY OF THE EVIDENCE

In his sole issue, Appellant contends that the evidence is factually insufficient to support his conviction. He contends that "the evidence presented was too contradictory, too sparse, too weak, too preposterous, too misleading or inaccurate at some points, and too exculpatory at other points" to justify the conviction. He argues that S.B. and L.B., as well as L.B.'s three other children, all had access to B.G. within the relevant time period.

## Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view the evidence in a neutral light and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009). In conducting a factual sufficiency review, we must discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Although we are authorized to disagree with the jury's determination to a very limited degree, we must nevertheless give the jury's verdict a great degree of deference. *Steadman*, 280 S.W.3d at 246. Our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997); *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

Any issue in a criminal case may be proven circumstantially. *See Jordan v. State*, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In a circumstantial

4

evidence case, it is unnecessary for every fact to point directly and independently to the defendant's guilt; rather, it is sufficient if the finding of guilt is supported by the cumulative force of all the incriminating evidence. ***Powell v. State***, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). Further, the factual sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. ***Grotti v. State***, 273 S.W.3d 273, 281 (Tex. Crim. App. 2008). Such a charge would include one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried. ***Id.*** at 280-81.

A person commits the first degree felony offense of injury to a child by intentionally or knowingly causing to a person fourteen years of age or younger serious bodily injury or serious mental deficiency, impairment, or injury. *See* TEX. PENAL CODE ANN. § 22.04(a), (c), (e) (Vernon Supp. 2009).

## Analysis

Our review of all of the evidence reveals substantial support for the verdict. Specifically, the jury heard eyewitness testimony describing Appellant's abusive act, committed immediately before B.G. showed signs of injury. Appellant said the baby needed discipline. There was testimony describing other injuries of both babies and how the babies reacted to Appellant. There is absolutely no evidence that S.B., L.B., or L.B.'s children ever abused B.G. Medical care professionals believed that B.G. had been the victim of child abuse, specifically abusive head trauma. Those medical care professionals also testified that B.G.'s injuries were significant, substantial, and life threatening. Appellant, when questioned by the police, stated that he was alone with B.G. immediately prior to her showing signs of injury.

But, our review of all of the evidence in a neutral light reveals some evidence that is contrary to the verdict as well. Specifically, Appellant's attorney obtained a concession from Dr. Cox that the seizure may occur an hour or two after the abusive head trauma injury. Further, Appellant presented testimony that he was not with B.G. the entire day of her injury. Harris testified that Appellant was with him for a portion of the day. Also, S.B. had told several different versions of the events on the day in question. And, finally, Appellant's mother and Singleton testified that Appellant was a good father.

5

Appellant argues that Dr. Cox's testimony regarding when symptoms would be exhibited after injury refutes the State's allegation that Appellant injured B.G. While that testimony arguably expands the possible time period during which B.G. was injured, it does not rule out the possibility that Appellant caused the injury. Dr. Cox explained that immediately after the trauma the child would exhibit some symptoms and would act differently in some manner. She would be dazed or confused and she might stop breathing. He also testified that seizures *may* be delayed an hour or two, but he did not say they *would* be delayed. Finally, Dr. Cox testified that the acute subdural hematoma can be seen on a CT scan "within three days" of the injury, "[w]hich includes the first day." The jury was free to determine the weight and credibility of this evidence. *Santellan*, 939 S.W.2d at 164. The jury was entitled to disregard Harris's testimony that Appellant was with him on the day of the injury. Thus, the jury was entitled to believe that the injury occurred immediately before the seizure and that Appellant, not S.B., L.B., or L.B.'s children, caused the injury.

Further, the jury need not have believed that being thrown on the love seat and falling to the floor was sufficiently forceful to cause the head trauma in order to find Appellant guilty. The indictment alleged that Appellant caused the injury by inflicting violent traumatic force by an unknown object, by throwing her, by shaking her, by striking her head against an unknown object, and by striking her with an unknown object and with his hands. Dr. Cox testified that the injuries were caused by a severe and violent trauma and a lot of force. The circumstantial evidence supports a jury determination that additional abuse occurred while S.B. was outside the apartment.

Having reviewed the entire record, we determine that the evidence supporting the verdict is neither so obviously weak, nor so against the great weight and preponderance of the evidence, as to render the verdict manifestly unjust. *See Steadman*, 280 S.W.3d at 246. We conclude that the evidence is factually sufficient to support the jury's verdict. We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered December 16, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

6